IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| REALTIME DATA LLC D/B/A IXO,, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 6:17-CV-00084-JDL |
| v. | § § § | |
| ECHOSTAR CORPORATION, HUGHES NETWORK SYSTEMS, LLC, | § § § § | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Realtime Data, LLC's ("Realtime" or "Plaintiff") Motion to Strike Portions of the Invalidity Expert Reports of Dr. Clifford Reader and Dr. H.V. Jagadish (Doc. No. 167). Defendants EchoStar Corporation ("EchoStar") and Hughes Network Systems, LLC ("Hughes") ("EchoStar" and "Hughes" are collectively known as "Defendants") have filed a Response (Doc. No. 202), to which Plaintiff has filed a Reply (Doc. No. 216), and Defendants have filed a Sur-Reply (Doc. No. 232). Upon consideration of the Parties' arguments, Plaintiff's Motion (Doc. No. 167) is **GRANTED**, as set forth herein.

**BACKGROUND**

Plaintiff alleges that Defendants infringe certain claims of U.S. Patent No. 9,054,728 ("the '728 Patent") and U.S. Patent No. 8,502,707 ("the '707 Patent").[1] The Asserted Patents generally relate to different systems and methods of data compression. Plaintiff alleges that various gateway and terminal products sold by Defendants infringe the Asserted Claims of the Asserted Patents. Amidst a complex procedural history, the case eventually proceeded on a trial

---
[1] Pursuant to Stipulation, Plaintiff voluntarily elected not to pursue at trial previously asserted claims of several other U.S. Patents. (Doc. No. 248.)

1

schedule through the completion of discovery and through the filing of dispositive motions. (Doc. No. 246.) Defendants have designated Dr. Hosagrahar V. Jagadish and Dr. Clifford Reader as their invalidity expert witnesses. Plaintiff now brings the instant Motion seeking to strike portions of Dr. Jagadish's and Dr. Reader's reports.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(a)(2)(B) provides several requirements for disclosures expert witnesses must include as part of their written reports. Fed. R. Civ. P. 26(a)(2)(B). Among these requirements is, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Federal Rule of Civil Procedure 37(c)(1), discusses sanctions that may be imposed on a party failing to comply with the disclosure requirements set forth in Rule 26. Specifically, a court may prohibit improperly withheld information from being used, "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Federal Rule of Evidence 702 provides standards for the admissibility of expert testimony. Specifically, an expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167, 1175, 143 L. Ed. 2d 238 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93, 113 S.

Ct. 2786, 2796, 125 L. Ed. 2d 469 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire Co.*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Although the Fifth Circuit[2] and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). "The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

## DISCUSSION

Plaintiff seeks to strike portions of Dr. Jagadish's and Dr. Reader's invalidity reports on two grounds: (1) inclusion of, "boilerplate assertions of obviousness;" and (2) inclusion of, "theories of invalidity on patents and patent claims no longer asserted," by Plaintiff. (Doc. No. 167, at 3–9.) Defendants offer no argument in response to Plaintiff's first ground. (Doc. No. 202.) With respect to Plaintiff's second ground, Defendants argue the invalidity theories objected

---

[2] "Whether proffered evidence is admissible at trial is a procedural issue not unique to patent law," and therefore decisions whether to admit expert testimony are reviewed under the law of the regional circuit. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015) (citing *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390–91 (Fed. Cir. 2003)).

3

to by Plaintiff relate to Defendants' declaratory judgment counterclaims of invalidity. (Doc. No. 202, at 5–15.)

I. **"Boilerplate" Obviousness Assertions**

Both Dr. Jagadish and Dr. Reader include charts as an appendix to their reports that discuss how they contend each prior art reference reads on each element of the claims they allege are invalid. (Doc. No. 167, Ex. B and C.) At the end of each section discussing a particular claim element, Plaintiff alleges both experts include a "boilerplate" paragraph regarding obviousness. (Doc. No. 167, at 3–6.) Specifically, Plaintiff claims the two experts' reports combined contain 314 repetitions of the following template:

> To the extent it is found that the element is not expressly disclosed in [prior art reference], viewing [prior art reference] as a whole and in view of contemporary prior art, this element would have been inherent or obvious to one of ordinary skill. [Prior art] render[s] it obvious, either alone, in combination with the knowledge of a person of a person of ordinary skill in the art, and/or in combination with other prior art references identified herein.

(Doc. No. 167, at 4.)

Relying primarily upon *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*[3], Plaintiff argues that this "boilerplate" language fails to comply with Rule 26(a)(2)(B)(i)'s requirement that expert reports contain "a complete statement of all opinions the witness will express and the basis and reasons for them." (Doc. No. 167, at 3–6.) Plaintiff argues that similar to the case in *Karl Storz*, Plaintiff is prejudiced as: (1) Plaintiff cannot adequately prepare for cross examination of Dr. Jagadish and Dr. Reader; and (2) Plaintiff's own rebuttal expert is unable to adequately counter the opinions of Dr. Jagadish and Dr. Reader with their own reasoning. (Doc. No. 167, at 5.)

---

[3] No. 14-CV-00876-RS (JSC), 2018 WL 3646842, at *9–10 (N.D. Cal. Aug. 1, 2018).

4

Defendants have offered no response in opposition to Plaintiff's arguments. Accordingly, Plaintiff's Motion is **GRANTED** with respect to its claims regarding "boilerplate" language and the Court **STRIKES** the language following the paradigm discussed above from Dr. Jagadish's and Dr. Reader's reports.

## II. Invalidity Arguments Based on Defendants' Declaratory Judgment Counterclaims

At this time, Plaintiff has voluntarily elected to only pursue infringement claims based on claims 1, 4, 20, and 24–25 of U.S. Patent No. 9,054,728 ("the '728 Patent") and claim 16 of U.S. Patent No. 8,502,707 ("the '707 Patent") at trial.[4] (Doc. No. 167, Ex. G; Doc. No. 248.) Through the course of this litigation, Plaintiff has previously asserted multiple other patents. Defendants have brought counterclaims alleging invalidity of every claim of the '728 Patent, '707 Patent, '204 Patent, and U.S. Patent No. 7,358,867 ("the '867 Patent"). (Doc. No. 155.) Defendants still maintain their counterclaims, even though Plaintiff has dropped several previously asserted claims. Thus, Defendants' invalidity experts discuss invalidity of these Patents in their reports.

Plaintiff seeks to strike discussion of invalidity of all Patents and claims no longer being asserted by Plaintiff. (Doc. No. 167, at 6–9.) Plaintiff argues that Defendants' inclusion of these Patents and claims: (1) violates the Court's Order Focusing Patent Claims and Prior Art to Reduce Costs; and (2) lacks subject matter jurisdiction as a "case or controversy" no longer exists for unasserted patent claims. (Doc. No. 167, at 6–9.) In response, Defendants argue that: (1) the Order Focusing Patent Claims and Prior Art to Reduce Costs does not implicate declaratory judgment of counterclaims; and (2) the Court still maintains jurisdiction over the invalidity counterclaims. (Doc. No. 202, at 5–15.)

---

[4] Subsequent to filing the instant Motion, the Parties stipulated that Plaintiff voluntarily elects not to pursue any claim of infringement of U.S. Patent No. 8,717,204 ("the '204 Patent") at trial. (Doc. No. 248.)

For a court to hold subject matter jurisdiction under the Declaratory Judgment Act, there must be a, "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 771, 166 L. Ed. 2d 604 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941)). Courts, however, hold, "unique and substantial discretion," in deciding whether to exercise discretionary dismissal of a declaratory judgment action based upon equitable, prudential, and policy grounds. *Id.* at 136–37 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137, 2142, 132 L. Ed. 2d 214 (1995)).

Plaintiff has granted a covenant not to sue on *some*, but not all of the dropped previously asserted claims.[5] Defendants argue that Plaintiff granting a covenant not to sue on some, but not all, of the dropped previously asserted claims demonstrates an intent by Plaintiff to potentially relitigate these claims in the future—thus, establishing an actual case or controversy. (Doc. No. 202, at 5–10.) A patentee's grant of a covenant not to sue for infringement can certainly eliminate a court's jurisdiction to hear an invalidity declaratory judgment action. *Arris Grp., Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1380–81 (Fed. Cir. 2011). The dispute, however, in the instant case is not whether a covenant not to sue is *sufficient* to divest a court of jurisdiction to hear a declaratory judgment action, but rather whether it is required. Defendants argue that Plaintiff's refusal to grant a covenant not to sue on all dropped claims "forecasts future litigation." (Doc. No. 202, at 8.)

"[I]n patent cases, the existence of a 'case or controversy must be evaluated on a claim-by-claim basis.'" *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1281 (Fed. Cir.

---

[5] Specifically, Plaintiff has offered a covenant not to sue on claims 16 and 17 of the '867 Patent and claims 17, 30, 32, and 36 of the '707 Patent, which were voluntarily dropped after Plaintiff's deadline for final election of asserted claims. (Doc. No. 202, Ex. 2.)

6

2012) (quoting *Jervis B. Webb Co. v. S. Sys., Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984)). Furthermore, "jurisdiction must exist 'at all stages of review, not merely at the time the complaint [was] filed.'" *Id.* at 1282 (quoting *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1345 (Fed. Cir. 2007)). The party seeking a declaratory judgment bears the burden of establishing the existence of an actual case or controversy. *Id.*

A case or controversy does not automatically exist because a competitor seeks to mount a validity challenge. *Id.* at 1284. Indeed, the Federal Circuit has found a court may lack jurisdiction to hear a declaratory judgment action invalidity counterclaim—even in the absence of a covenant not to sue—when a patentee voluntarily narrows the scope of asserted claims prior to a dispositive ruling by the court. *Id.*; *Allergan, Inc. v. Sandoz, Inc.*, 681 F. App'x 955, 962–64 (Fed. Cir. 2017); *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1308 (Fed. Cir. 2012). In the instant case, Plaintiff has voluntarily elected to not pursue at trial several previously asserted claims. (Doc. No. 167, Ex. G; Doc. No. 248.) A patentee's voluntary withdraw of previously asserted patent claims is, "akin to either a Federal Rule of Civil Procedure 15 amendment to the complaint, . . . or a Rule 41(a) voluntary dismissal of claims without prejudice."[6] *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1353 (Fed. Cir. 2012). Much like the case in *Streck*, *Allergan*, and *Fox Group*, Plaintiff has voluntarily narrowed the scope of asserted claims prior to a dispositive ruling by the Court. *Streck, Inc.*, 665 F.3d at 1284; *Allergan, Inc.*, 681 F. App'x at

---

[6] The Stipulation the Parties have filed with the Court (Doc. No. 248) indicates several patents Plaintiff has voluntarily elected not to pursue at trial. Of the two remaining patents (the '728 Patent and the '707 Patent), Plaintiff relies upon an e-mail it sent to Defendants' counsel notifying them of Plaintiff's specific claim elections. (Doc. No. 167, Ex. G.) The Court finds this sufficient for Plaintiff to withdraw asserted claims. *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1193 (Fed. Cir. 2014) ("[W]e have not previously held that a formal motion or stipulation was required to remove claims from a case and we decline to do so here. On the contrary, we recently decided that a patentee's announcement that it was no longer pursuing particular claims, coupled with its ceasing to litigate them, was sufficient to remove those claims from the case even without such formalities." (citing *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1353 (Fed. Cir. 2012))).

7

962–64; *Fox Grp., Inc.*, 700 F.3d at 1308. Defendants generalized "forecasts of future litigation" based solely upon Plaintiff's right to threaten or maintain litigation in the future for infringement of the withdrawn claims, does not establish the existence of a continuing case or controversy. *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-cv-00744-JRG-RSP, 2016 WL 1426451, at *1 (E.D. Tex. Mar. 1, 2016), *report and recommendation adopted sub nom. Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-cv-00744-JRG-RSP, 2016 WL 1404214 (E.D. Tex. Apr. 11, 2016); *see also Joao Control & Monitoring Sys., LLC v. Telular Corp.*, No. 1:14-cv-09852, 2017 WL 1151052, at *3–7 (N.D. Ill. Mar. 28, 2017).

Furthermore, equitable considerations support declining to exercise jurisdiction to hear the declaratory judgment invalidity counterclaim. *MedImmune, Inc.*, 549 U.S. at 136–37. This Court has recognized that, "[r]eduction of claims and related invalidity defenses are an important case management tool." *VirnetX Inc. v. Cisco Sys., Inc.*, No. 6:10-cv-00417, 2014 WL 12605380, at *5 (E.D. Tex. Mar. 28, 2014); *see also Metaswitch Networks Ltd.*, No. 2:14-cv-00744-JRG-RSP, 2016 WL 1426451, at *1 (discussing the court's reliance upon the parties to act in good faith to voluntarily narrow the scope of the case). However, "[f]or the process to work there must be fairness—both claims and related invalidity defenses need to be dismissed on the same basis, either with or without prejudice." *VirnetX Inc.*, No. 6:10-cv-00417, 2014 WL 12605380, at *5. As discussed, *supra*, Plaintiff's voluntary election not to pursue certain claims at trial operates as a dismissal without prejudice. Accordingly, considerations of equity and judicial economy would support dismissing Defendants' invalidity counterclaims on the same basis.

As the Court no longer exercises jurisdiction over Defendants' invalidity counterclaims relating to patent claims Plaintiff has voluntarily elected not to pursue at trial, expert testimony on the invalidity of these patent claims is no longer helpful to the trier of fact, "to understand the

evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Accordingly, the Court finds it appropriate that this testimony be **STRICKEN** from Dr. Jagadish's and Dr. Reader's invalidity reports and *sua sponte* **DISMISSES WITHOUT PREJUDICE** these invalidity counterclaims. *Packet Intelligence LLC v. NetScout Systems, Inc.*, No. 2:16-cv-00230-JRG, Doc. No. 228, slip op. at 12 (E.D. Tex. Sept. 29, 2017) (dismissing without prejudice, *sua sponte*, invalidity counterclaims with respect to unasserted patents on a motion to strike expert opinions).

## CONCLUSION

For the reasons stated herein, the Court **GRANTS** Plaintiff's Motion (Doc. No. 167). Specifically, the Court **STRIKES** the "boilerplate" language following the paradigm discussed above from Dr. Jagadish's and Dr. Reader's reports. Furthermore, the Court **DISMISSES WITHOUT PREJUDICE** Defendants' invalidity counterclaims with respect to patent claims Plaintiff has voluntarily elected not to pursue at trial[7]; **STRIKES** any reference to the validity of these claims from Dr. Jagadish's and Dr. Reader's invalidity reports; and **ORDERS** Dr. Jagadish and Dr. Reader be precluded from testifying on these claims at trial.

**So ORDERED and SIGNED this 29th day of November, 2018.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

---

[7] This includes all claims of the '204 Patent and '867 Patent, as well as claims 2–3, 5–19, and 21–23 of the '728 Patent and claims 1–15 and 17–96 of the '707 Patent.