IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| REALTIME DATA LLC D/B/A IXO,, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 6:17-CV-00084-JDL |
| v. | § § § | |
| ECHOSTAR CORPORATION, HUGHES NETWORK SYSTEMS, LLC, | § § § § | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Realtime Data, LLC's ("Realtime" or "Plaintiff") Motion to Strike Portions of the Jagadish August 3, 2018 Noninfringement Report (Doc. No. 174). Defendants EchoStar Corporation ("EchoStar") and Hughes Network Systems, LLC ("Hughes") ("EchoStar" and "Hughes" are collectively known as "Defendants") have filed a Response (Doc. No. 195), to which Plaintiff has filed a Reply (Doc. No. 213), and Defendants have filed a Sur-Reply (Doc. No. 231). Upon consideration of the Parties' arguments, Plaintiff's Motion (Doc. No. 174) is **GRANTED-IN-PART** and **DENIED-IN-PART**, as set forth herein.

**BACKGROUND**

Plaintiff alleges that Defendants infringe certain claims of U.S. Patent No. 9,054,728 ("the '728 Patent") and U.S. Patent No. 8,502,707 ("the '707 Patent").[1] The Asserted Patents generally relate to different systems and methods of data compression. Plaintiff alleges that various gateway and terminal products sold by Defendants infringe the Asserted Claims of the Asserted Patents. Amidst a complex procedural history, the case eventually proceeded on a trial

---
[1] Pursuant to Stipulation, Plaintiff voluntarily elected not to pursue at trial previously asserted claims of several other U.S. Patents. (Doc. No. 248.)

1

schedule through the completion of discovery and through the filing of dispositive motions. (Doc. No. 246.) Defendants have designated Dr. Hosagrahar V. Jagadish as an expert witness on invalidity and noninfringement. Plaintiff now brings the instant Motion seeking to strike portions of Dr. Jagadish's noninfringement report.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2)(B) provides several requirements for disclosures expert witnesses must include as part of their written reports. Fed. R. Civ. P. 26(a)(2)(B). Among these requirements is, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Additionally, expert witnesses must disclose, "the facts or data considered by the witness in forming [their opinions]." Fed. R. Civ. P. 26(a)(2)(B)(ii). Parties must, "make these disclosures at the times and in the sequence that the court orders."[2] Fed. R. Civ. P. 26(a)(2)(D). These disclosures must be supplemented, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(a)(2)(E), 26(e). Federal Rule of Civil Procedure 37(c)(1), discusses sanctions that may be imposed on a party failing to comply with the disclosure requirements set forth in Rule 26. Specifically, a court may prohibit improperly withheld information from being used, "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Federal Rule of Evidence 702 provides standards for the admissibility of expert testimony. Specifically, an expert witness may provide opinion testimony if "(a) the expert's

---

[2] In the instant case, the Court issued a Docket Control Order setting forth various discovery deadlines. (Doc. No. 246.)

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167, 1175, 143 L. Ed. 2d 238 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93, 113 S. Ct. 2786, 2796, 125 L. Ed. 2d 469 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire Co.*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Although the Fifth Circuit[3] and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). "The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be

---

[3] "Whether proffered evidence is admissible at trial is a procedural issue not unique to patent law," and therefore decisions whether to admit expert testimony are reviewed under the law of the regional circuit. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015) (citing *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390–91 (Fed. Cir. 2003)).

grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

## DISCUSSION

Plaintiff seeks to strike portions of Dr. Jagadish's noninfringement report on two grounds: (1) applying Plaintiff's infringement theories to the alleged prior art "PES 5000 System;" and (2) inclusion of allegations regarding "servers" that allegedly make up at least some of the accused gateway products, due to Defendants' alleged failure to timely disclose their factual support for this allegation during discovery. (Doc. No. 174, at 4–14.) In response, Defendants argue: (1) Dr. Jagadish's analysis of the PES 5000 System is a timely and proper rebuttal opinion; and (2) information regarding "servers" was properly disclosed during discovery and has appeared in Plaintiff's infringement contentions, as well as Plaintiff's own infringement expert's (Dr. Wesel) report. (Doc. No. 195, at 5–19.)

### I. PES 5000 System Alleged Prior Art

Plaintiff argues that Dr. Jagadish's opinions contained in his noninfringement report regarding the PES 5000 System should be stricken on four grounds: (1) the opinions are an untimely attempt by Dr. Jagadish to supplement his invalidity opinions; (2) Dr. Jagadish's methodology for conducting his alleged invalidity analysis is legally flawed; (3) to the extent the Court characterizes Dr. Jagadish's opinions as rebuttal to Plaintiff's infringement expert's (Dr. Wesel) opinions, Dr. Jagadish's methodology remains flawed and unreliable; and (4) Dr. Jagadish's opinions are conclusory and fail to adequately disclose the factual basis and reasons behind them. (Doc. No. 174, at 5–11.) In its Response, Defendants maintain that Dr. Jagadish's opinions are rebuttal to Dr. Wesel's opinions—rather than affirmative invalidity opinions—and are the product of a reliable analysis. (Doc. No. 195, at 7–18.)

4

In its Sur-Reply, Defendants suggest, "the *real* issue [for the Court to determine] is whether § XV of the Rebuttal is a proper rebuttal opinion." (Doc. No. 231, at 5 (emphasis in original).) Defendants argue that Dr. Jagadish's report does not introduce a new affirmative invalidity analysis, but rather rebuts Dr. Wesel's analysis pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(ii). (Doc. No. 195, at 8–10.) To support this proposition, Defendants cite to multiple excerpts from Dr. Jagadish's deposition to argue Dr. Jagadish's report is a critique of the "assumptions and interpretations" made by Dr. Wesel during his analysis. (Doc. No. 195, at 8–10.) Defendants compare Dr. Jagadish's analysis to *PerdiemCo, LLC v. Industrack LLC*, in which the court permitted the defendant's non-infringement expert in that case to opine, "Plaintiff's technical [and infringement] expert . . . has oversimplified the Asserted Claims to such a degree that if his analysis is correct, the Asserted Claims should be invalid based on the prior art and prior uses discussed in [Defendant's invalidity expert's] report." *PerdiemCo, LLC v. Industrack LLC*, No. 2:15-cv-00727-JRG-RSP, 2016 WL 8135383, at *2–3 (E.D. Tex. Oct. 25, 2016). The noninfringement expert in *PerdiemCo* was ultimately critiquing the scope of the *PerdiemCo*'s plaintiff's infringement expert's analysis and explaining why his opinions were "untenable." *Id.* Judge Payne, however, noted that the noninfringement expert witness, "will not be permitted to conduct an independent invalidity analysis at trial or provide testimony on independent invalidity opinions." *Id.*

Defendants seek to disclaim any attempt by Dr. Jagadish to introduce a new affirmative invalidity analysis. (Doc. No. 195, at 8–10.) However, Defendants' argument that Dr. Jagadish's rebuttal opinions are intended, "***solely*** to rebut Dr. Wesel's July 3, 2018, infringement analysis as unreasonable," contradicts the actual text of Dr. Jagadish's report. (Doc. No. 195, at 5 (emphasis added).) For instance, Section XV of Dr. Jagadish's report is titled, "IN THE ALTERNATIVE,

5

THE WESEL REPORT'S INFRINGEMENT READ INVALIDATES THE ASSERTED PATENTS." (Doc. No. 174, Ex. 1 [hereinafter Jagadish Report] at § XV.) Dr. Jagadish begins this section by stating, "[i]n the alternative, applying the Wesel Report's infringement analysis to the prior PES 5000 System, the Wesel Report's own arguments *invalidate* all of the asserted claims." Jagadish Report at ¶ 913 (emphasis added). Dr. Jagadish then proceeds to analyze each element of each Asserted Claim. Jagadish Report at ¶¶ 915–999. At the conclusion of his discussion of each Asserted Claim, Dr. Jagadish states his ultimate conclusion, "[a]ccordingly, because the Wesel Report's infringement analysis invalidates every element in this claim, *I conclude that this claim is invalid*." Jagadish Report at ¶¶ 928, 931, 934, 947, 961, 974, 988, 993, 996, 999 (emphasis added). Notably absent from this section is a clear articulation of what alleged improper assumption or interpretation Dr. Wesel made in his analysis. Instead, Dr. Jagadish appears to merely use Dr. Wesel's report as a conduit to conclude that features of Accused Products discussed in Dr. Wesel's report are "analogous" to features present in the prior art—therefore, the Asserted Claims must be invalid.

Section XV of Dr. Jagadish's report clearly advances an affirmative invalidity theory. The deadline to serve invalidity reports was July 03, 2018—and Dr. Jagadish had indeed already prepared a separate report on invalidity. (Doc. No. 246.) Accordingly, this new affirmative invalidity theory was served untimely and may be excluded by the Court. Fed. R. Civ. P. 26(a)(2)(D), 37(c)(1).

Moreover, Dr. Jagadish's methods of analysis is flawed. In both an infringement and an invalidity analysis, the accused product or the prior art is compared to the *construed claim*. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996); *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709,

6

714 (Fed. Cir. 1998) ("We observe in passing that, not unlike a determination of infringement, a determination of anticipation, as well as obviousness, involves two steps. First is construing the claim, a question of law for the court, followed by, in the case of anticipation or obviousness, a comparison of the construed claim to the prior art."). An accused infringer may not, "skirt evidentiary hurdles and conflate the infringement and invalidity inquiries . . . [to] forsake[] any comparison between the asserted claims and the accused product, relying instead upon purported similarities between the accused product and the prior art." *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018). For each element of an Asserted Claim, Dr. Jagadish: (1) identifies features in the Accused Products that Dr. Wesel contends reads on that claim element; (2) opines the prior art has features "analogous" to the features identified by Dr. Wesel; and (3) concludes the Asserted Claim must therefore be invalid. Jagadish Report at ¶¶ 915–999. This type of analysis is legally flawed and risks possible jury confusion.[4] *01 Communique Lab., Inc.*, 889 F.3d at 742; *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1311–12 (Fed. Cir. 2008). Accordingly, this testimony is improper and may be excluded by the Court. Fed. R. Evid. 702.

In addition to Section XV (¶¶ 913–99), Plaintiff seeks to also strike paragraphs 7 and 51–88 of Dr. Jagadish's report. (Doc. No. 174, at 5.) In response, Defendants argue that paragraphs 7 and 51–88 of Dr. Jagadish's report either have no relationship to the alleged prior art PES 5000 System or are merely describing the background and development of the patented technology. (Doc. No. 195, at 5 n.1.) Plaintiff did not respond to this argument in their Reply brief. (Doc. No.

---

[4] Defendants cite multiple cases to suggest it is proper to compare prior art to Plaintiff's infringement theories. *01 Communique Lab., Inc.*, 889 F.3d at 742; *PerdiemCo, LLC*, No. 2:15-cv-00727-JRG-RSP, 2016 WL 8135383, at *2–3; *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, No. 16-cv-00698-CAB-NLS, 2018 WL 3707023, at *16 (S.D. Cal. Aug. 3, 2018); *Realtime Data LLC v. Actian Corp.*, No. 6:15-cv-463, Doc. No. 491, slip op. at 6 (E.D. Tex. Apr. 3, 2017). These cases, however, involve invoking prior art to critique an allegedly "broad" or "untenable" scope of a plaintiff's infringement theories and analyze invalidity by comparing prior art to the construed claims. *Id.* Indeed, these cases seek to distinguish from improper theories of invalidity or noninfringement that "merely . . . point[] to similarities between an accused product and the prior art." *01 Communique Lab., Inc.*, 889 F.3d at 742.

213.) The Court agrees paragraphs 51–88 of Dr. Jagadish's report generally relate to background regarding the art and should not be struck based on the grounds argued in the instant Motion. In paragraph 7 of his report, Dr. Jagadish reserves the right at trial to: (1) cite the content of his report and its attachments; (2) cite the materials cited within his report or considered when forming his opinions; and (3) create demonstratives in support of his testimony. Jagadish Report at ¶ 7. The Court finds this acceptable, with the exception of Dr. Jagadish's disclosure he may, "demonstrate the operation of the PES 5000 System referenced in this report specifically with respect to the Wesel Report's infringement allegations." Jagadish Report at ¶ 7. A live demonstration of the PES 5000 System "with respect to the Wesel Report's infringement allegations," would lead to the same evidentiary problems discussed, *supra*.

Accordingly, the Court **GRANTS** Plaintiff's Motion with respect to the alleged PES 5000 System prior art; **STRIKES** paragraphs 913 to 999 and paragraph 7, as it relates to a live demonstration of the PES 5000 System "with respect to the Wesel Report's infringement allegations;" and **ORDERS** testimony on these topics be precluded at trial.

**II.     Discussion Regarding "Servers"**

Plaintiff argues that Dr. Jagadish in his report opines regarding "servers" that purportedly make up some of the accused gateways. (Doc. No. 174, at 11–13.) Plaintiff argues that Dr. Jagadish relies upon a document that was first disclosed to Plaintiff on July 20, 2018—after the close of fact discovery and serving Dr. Wesel's report—as the basis of his opinions about "servers." (Doc. No. 174, at 11–13.) Plaintiff thus argues this information was untimely disclosed and should be excluded pursuant to Federal Rule of Civil Procedure 37(c)(1). (Doc. No. 174, at 11–13.)

Defendants argue that information regarding "servers" has been included in Plaintiff's own infringement contentions and included in Dr. Wesel's report. (Doc. No. 195, at 18–19.) Moreover, Defendants note that Defendants' discovery was supplemented to include the document in question pursuant to an agreement between the Parties to resolve a Motion to Compel filed by Plaintiff. (Doc. No. 137.)

To the extent the supplemental discovery produced by Defendants created the need for additional fact discovery or the need to supplement Dr. Wesel's infringement report, Plaintiff should have timely requested leave from the Court to do so. Plaintiff has not filed such a request. Plaintiff cannot now complain that Defendants' expert witness seeks to rely upon documents that are now part of the factual record of this case. Accordingly, Plaintiff's Motion with respect to Dr. Jagadish's allegations relating to "servers" is **DENIED**.

## CONCLUSION

For the reasons stated herein, the Court **GRANTS-IN-PART** and **DENIES-IN-PART**, Plaintiff's Motion (Doc. No. 174). Specifically:

The Court **GRANTS** Plaintiff's Motion with respect to the alleged PES 5000 System prior art; **STRIKES** paragraphs 913 to 999 and paragraph 7, as it relates to a live demonstration of the PES 5000 System "with respect to the Wesel Report's infringement allegations;" and **ORDERS** testimony on these topics be precluded at trial.

The Court **DENIES** Plaintiff's Motion with respect to Dr. Jagadish's allegations relating to "servers.

"

**So ORDERED and SIGNED this 29th day of November, 2018.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE